**In re Thomas W. FARQUHAR, Appellant.**

**No. 72–1088.**

United States Court of Appeals, District of Columbia Circuit.

Argued April 17, 1973.

Decided Oct. 30, 1973.

---

Albert J. Ahern, Jr., Bailey's Crossroads, Va., for appellant.

Joseph E. di Genova, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., and John A. Terry, Asst. U. S. Atty., were on the brief, for appellee. James A. Fitzgerald, Asst. U. S. Atty., also entered an appearance for appellee.

Before BAZELON, Chief Judge, JOHN MINOR WISDOM,* Circuit Judge for the Fifth Circuit, and WILKEY, Circuit Judge.

WISDOM, Circuit Judge:

Thomas W. Farquhar, appellant, was convicted of criminal contempt under 18 U.S.C. § 401(1), (3) [1] and F.R.Cr.P. 42(a). [2] On appeal, he contends that the certificate of contempt should have been dismissed because it failed to establish the crime of contempt; that the trial judge should have issued an order to show cause under F.R.Cr.P. 42(b) before holding the appellant in contempt; that the record fails to show the requisite criminal intent; and, that a simultaneous appearance before another judge is a complete defense. We conclude that the record fails to show that the appellant had the requisite criminal intent to commit the crime of contempt. We therefore reverse the conviction.

I.

On December 14, 1971, Thomas Farquhar commenced trial as counsel for Charles Crawley whom he was appointed to defend under the Criminal Justice Act. On December 15, just before the midday recess, Farquhar asked Judge George L. Hart, Jr., the trial judge, to

---

* Sitting by designation pursuant to 28 U.S.C. § 291(a) (1970).

1. 18 U.S.C. § 401 reads:

A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and no other as—

(1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice,

.     .     .     .     .

(3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

2. F.R.Cr.P. 42(a) provides for summary disposition of criminal contempt committed "in the actual presence of the court". 42(b) provides for disposition upon notice and hearing of a criminal contempt not committed in the presence of the court.

permit him to go "next door" to inform Judge Oliver Gasch that he would be unable to be in Judge Gasch's courtroom at 1:45 p. m. to conclude a bond hearing which had been continued three times. Judge Hart, at 12:30 p. m., declared a recess until 1:45 p. m. The last words on the record before the recess are the court's: "If counsel is one second late he will be fined. I will also see counsel at 1:35 in chambers." The court refused him this permission but stated that Farquhar should go there before 1:45 and tell Judge Gasch that he would be unable to attend the bond hearing.

At 1:35 Farquhar arrived on schedule at the trial judge's chambers. When he concluded their meeting at 1:39 he asked if he could go to the second judge's chambers. He was told that he could but that he must return by 1:45 p. m.

The trial was reconvened at 1:45 but Farquhar did not arrive until 1:53 p. m., eight minutes late. The Court called him to the bench and explained that he had kept waiting "fourteen jurors, a reporter, a marshall, a clerk, a United States attorney, another defense attorney and several witnesses and the court. . . ." Farquhar apologized but explained that when he arrived at Judge Gasch's courtroom that judge's clerk told him not to leave because the hearing would be called first. He explained to the trial judge: "I said I would leave if they didn't take the matter promptly. I would not have stayed in [Judge Gasch's] court if [he] would let me go. I would have had to walk out on him and I am reluctant to do that." The trial court immediately found Farquhar in contempt under F.R.Cr.P. 42(a) and fined him $150.

On appeal, the appellant states that when he arrived at the second judge's courtroom, he was told that the judge would be taking the bench immediately and his case would be called first. All other parties necessary for the bond hearing were present including government counsel and the defendant. Per-

haps two minutes later the judge took the bench and called a preliminary matter. As Farquhar stood up to leave the clerk called the bond hearing. The appellant explained that he was in trial in another court, but Judge Gasch assured him that the hearing would be handled expeditiously. The hearing lasted ten minutes.

## II.

At the outset the appellant contends that, even if his actions constituted contempt, they were not "committed in the actual presence of the court". If committed outside the presence of the court, the court may not act summarily under F.R.Cr.P. 42(a) to punish the offender but is required under part (b) to notify the defendant of the essential facts constituting the contempt, schedule a hearing with prior notice to the defendant, and allow the defendant a reasonable time for preparation of a defense.

After the parties filed their briefs in this action, we concluded in In re Niblack, 156 U.S.App.D.C. 20, 476 F.2d 930 (1973) and in In re Gates, 156 U.S.App.D.C. 88, 478 F.2d 998 (1973) that tardiness of counsel, after counsel is ordered to appear in court at a specified hour, is an act occurring in the presence of the court "or so near thereto as to obstruct the administration of justice". 18 U.S.C. § 401(1). This Court in *Niblack* distinguished Klein v. United States, 80 U.S.App.D.C. 106, 151 F.2d 286 (1945) and Sykes v. United States, 144 U.S.App.D.C. 53, 444 F.2d 928 (1971), which the appellant argues are controlling here. Both because of our recent decisions and because the trial judge here was aware of the essential facts, we conclude there was no error of procedure. We consider it appropriate to note, however, that in *Gates*, decided after *Niblack*, the court itself raised, but did not answer, the issue whether the "spirit of Rule 42(a) does not call upon the judge, when he apprehends that the issue of contempt for tardiness involves, by way of excuse, matters outside the

**564**

presence of the court, to proceed by reference of the matter to another judge, and invocation of Rule 42(b)". *Gates*, 156 U.S.App.D.C. at 90, 478 F.2d at 1000.

### III.

■ The appellant also contends that his conviction is invalid because he did not possess the criminal intent to commit a contempt. Criminal contempt requires both a contemptuous act and a wrongful state of mind. In Sykes v. United States, 144 U.S.App.D.C. 53, 444 F.2d 928, 930, (1971) we stated:

> An essential element of [criminal contempt] is an intent, either specific or general, to commit it. [citations omitted]. By definition, contempt is a 'wilful disregard or disobedience of a public authority.' [citations omitted]. The requisite intent may be inferred if a lawyer's conduct discloses a reckless disregard for his professional duty. In the appellant's case however, there was no evidence that he deliberately or recklessly disregarded his obligation to the court, or that he intended any disrespect for the court. On the contrary it is clear from his unchallenged explanation that his failure to appear was not by design but resulted from a lapse of memory, preoccupation with another case, and confusion as to dates. . . . The specter of a default because of forgetfulness or confusion haunts the dreams of every busy trial lawyer. Nor was there any suggestion that the appellant's lapse was anything but an isolated aberration.

In contrast to *Sykes* is *Niblack* where the attorney was an hour and fifty minutes late after he had been warned "time and time again about being on time". The district judge in *Niblack* noted that the attorney's tardiness had "happened many times in the past". The court there concluded that the evidence "met the test of criminal intent applied in Sykes v. United States" and affirmed a fifty dollar fine. Similarly in *Gates*, where the attorney was fifty minutes late, the Court concluded that there was sufficient evidence of intent, but reduced the fine to fifty dollars.

■ Here we review a fine of one hundred and fifty dollars for eight minutes tardiness where there is no evidence that Farquhar was repeatedly unpunctual. The trial judge gave Farquhar express permission to go to the other courtroom. The judge presiding over the bond hearing, as well as the trial judge, knew of Farquhar's predicament and completed the hearing within ten minutes.

Had the appellant abruptly left the hearing to literally comply with Judge Hart's order not to be a second late, he would have risked insult, disrespect, or even contempt of Judge Gasch. Moreover, he would perhaps have obstructed "the administration of justice" by causing a fourth continuance of the bond hearing.

Though the appellant is not blameless for the creation of this conflict and might have judiciously foreseen the potential for an impasse, his conduct was not "contumacious", *Gates*, 478 F.2d 998; or in "reckless and wilful disregard of the court's order," *Niblack*, 476 F.2d 930; nor did it disclose "[a reckless] disregard for his professional duty" or that "he intended any disrespect for the court". *Sykes*, 444 F.2d at 930. We admire and respect Judge Hart's acknowledged sense of judicial propriety, but because the record discloses no criminal intent on the part of the appellant, we feel compelled to reverse the conviction for contempt. Our conclusion on this issue makes it unnecessary to discuss appellant's other points of error.

Reversed and remanded.

WILKEY, Circuit Judge, dissenting:

The simplicity of this little case belies its importance. At stake are fundamental values in an orderly system of justice. The preservation of that orderly system depends upon the intelligent co-

operation of judges and the attorneys who appear before them. Dereliction of duty on the part of either can disrupt the system. In our country, in contrast to Great Britain, where the discipline of the bar is rigid, a greater share of the burden is borne by the trial judge.

Disrespect for our system of justice is rampant.[1] One reason for this is the public's all too accurate knowledge of the laxity in the courts, laxity in decorum, laxity in the conduct of judges, laxity in the firm disposition of convicted criminals, laxity in the conduct of attorneys toward the court. The most fundamental primary principle would seem to be that a court's direct order to an attorney, an officer of the court, must be obeyed. If no degree of firmness is shown in enforcing this, what else can be enforced in a courtroom? With all due respect to the lenient view taken by my two colleagues, I must say that the reversal of this contempt conviction will encourage a sloppy permissiveness which can only create disrespect for all judges and our entire court system.

In this case, the District Judge specifically advised the appellant, not once but twice, that if he were late he would be fined. We need not speculate that prior conduct of the same attorney prompted the District Judge to issue this cautionary advice; it is sufficient to say that if this attorney had never appeared before this District Judge previously, a twice repeated direct order of the trial judge is unquestionably a sufficiently firm basis on which to predicate a contempt citation.

The facts show that, in contrast with previous cases involving the failure to show up for a docket call or the beginning of trial, the trial of the case was actually in progress, the jury had been impaneled, witnesses and court attendants were present, a total of about 20

persons were in the full performance of their duties. At the noon recess the appellant attorney informed District Judge Hart that he had another matter on which he was supposed to appear in Judge Gasch's courtroom at 1:45 p. m. Judge Hart, being in the middle of trial, declined to give appellant permission to go to Judge Gasch's courtroom at 1:45 p. m., but did direct him to go to Judge Gasch and tell him he was in trial and that the trial was to continue at 1:45. Appellant did not carry out this admonition of Judge Hart, and therein was his original sin.

The District Court has a well understood rule that if counsel is actually in trial in the courtroom of one judge, he must be excused from any previously scheduled appearance in the courtroom of another judge. All that was necessary to invoke this rule was for appellant Farquhar to inform either Judge Gasch, his clerk, his bailiff, or perhaps his secretary, that he was actually in trial in Judge Hart's courtroom, due back before 1:45, and therefore would be unable to keep the previously scheduled commitment to Judge Gasch at 1:45.

But appellant did not do this. He apparently put priority on his lunch, returned to Judge Hart at 1:35 p. m., at 1:39 p. m. asked again if he could go next door to see Judge Gasch; Judge Hart gave him permission to go but again advised him that he must be back at 1:45.

Appellant then committed his inevitably damning sin. He went next door, Judge Gasch was not there. After conversation with the clerk, he then did deliberately that which absolutely insured that he would disobey Judge Hart's order—he awaited the appearance of Judge Gasch to present the matter before him,[2] instead of doing what he should have done earlier, advise Judge Gasch's clerk he was actually in trial be-

1. See the writer's "Proposal For a 'United States Bar'", 58 A.B.A. Journal 355, April 1972.

2. Judge Gasch was not then present, only his clerk. The clerk could advise, but not command. The erroneous decision to remain was made of appellant's own free will.

fore Judge Hart, and return there immediately. The exact minute Judge Gasch would take the bench was problematical; the exact time Judge Hart had ordered appellant to be present was not. The case which Judge Gasch would call first was problematical (it turned out to be other than appellant's case); the case Judge Hart would call at 1:45 was not. Appellant Farquhar was there when Judge Gasch ascended the bench at 1:43 p. m. By now appellant had placed himself in an impossible position; there was no way in the world he could have appeared at 1:45 before Judge Gasch and obeyed Judge Hart's twice repeated order to be back at 1:45 in Judge Hart's courtroom.

The Court's opinion puts the reversal solely and squarely on the lack of the "requisite criminal intent to commit the crime of contempt." The authorities are legion that a person is presumed to intend the logical and necessary consequences of his act. The logical, necessary and inevitable consequence of appellant Farquhar's act in waiting to see Judge Gasch would be that he would be unable to see Judge Hart in a separate place at the same time. One of the earliest laws of physics worked out by the ancient Greeks is that a person cannot be in two separate locations simultaneously. Unless appellant Farquhar wishes to dispute or plead ignorance of this principle, he cannot be heard to say that he did not intend, when he remained in Judge Gasch's courtroom at 1:45, to be absent from Judge Hart's courtroom at the same instant.

There is very recent authority in this jurisdiction squarely in point. In In Re Niblack[3] ". . . Niblack disobeyed the order that he be in court at a specified hour to proceed with a hearing. . . . We think the record in this case justifies the conclusion that the appellant's conduct was in reckless and wilful disregard of the court's order that he appear promptly for the scheduled hearing. Thus, the record supports the finding that the appellant's disobedience of the court's order met the test of criminal intent applied in Sykes v. U. S."[4]

Perhaps even more squarely in point is an even more recent case, In re Gates.[5] The guilty attorney did just what Farquhar did in this case. He was aware of a conflict in his schedule, and went to the Magistrate's office instead of appearing at 10:00 a. m. before the District Judge as directed. He sought to justify his conduct on the ground that the District Court knew that he had a preliminary matter. He was advised by the Court: "I think you have been contemptuous. I knew you had a preliminary matter but I advised you to be here at 10 a. m. in Court."[6] On appeal this court held "[n]or can we accept the contention that there was insufficiency of evidence of contumacious intent to support the finding of contempt by the trial judge."[7]

The principles enunciated most recently in Gates, Niblack and Sykes call for affirmance of the District Court's action here. It would be hard to postulate a more clear and direct order of a District Judge, twice repeated, and more knowingly or intentionally violated by an attorney who placed himself at another location at the moment appointed for his appearance in the trial in which he was already engaged.

I would affirm.

3. 156 U.S.App.D.C. 20, 476 F.2d 930 (8 March 1973).

4. 144 U.S.App.D.C. 53, 444 F.2d 928 (1971).

5. 156 U.S.App.D.C. 88, 478 F.2d 998 (7 May 1973).

6. 478 F.2d at 999.

7. Id. at 1000.