## In the Matter of Alfred M. SCHWARTZ, Appellant.

### No. 12089.

District of Columbia Court of Appeals.

Argued June 14, 1978.

Decided Aug. 29, 1978.

Alfred M. Schwartz, pro se.

Leo N. Gorman, Asst. Corp. Counsel, Washington, D. C., with whom John R. Risher, Jr., Corp. Counsel, Washington, D. C., and Richard W. Barton, Deputy Corp. Counsel, Washington, D. C., were on brief, for appellee.

Before GALLAGHER, YEAGLEY and MACK, Associate Judges.

PER CURIAM:

Appellant, an attorney, was summarily adjudged guilty of contempt of court and ordered to pay a fine of $200 or serve a sentence of ten days in jail. He contends on appeal the evidence was insufficient to support a finding of contempt. We agree and reverse.

Appellant was counsel for a defendant (husband) in a divorce proceeding in the Domestic Relations Branch of Superior Court. The divorce had been granted by the court in February 1976, but the case was continued for further hearings to determine the questions of custody of the minor child, the amount of child support, and whether attorney's fees should be awarded to the plaintiff (wife). By April 7, 1977, the matter of custody had been settled and, on that date, a hearing was held to dispose of the remaining issues. During the course of this proceeding, appellant attempted to elicit testimony from his client with respect to payments made on the parties' jointly-owned property. The following exchange then occurred:

[PLAINTIFF'S COUNSEL] . . . [M]y objection [is] that it's not relevant to this proceeding.

THE COURT: Sustained.

MR. SCHWARTZ: The grounds of my—

THE COURT: I sustained the objection.

MR. SCHWARTZ: I know, but I want to state the ground for the benefit of the Court and for the benefit of any further proceedings that may be involved.

THE COURT: I don't think you have to. I don't have the time, Mr. Schwartz. Go ahead, will you? I have a whole calendar waiting for me. This was represented to me, this motion, if we started promptly at 10:00, should have been over by now.

MR. SCHWARTZ: I made no representation to Your Honor as to time.

THE COURT: Well, I'm making a representation to you. I'm only going to hear relevant evidence.

Go ahead, Mr. Schwartz. And, with respect to [counsel for plaintiff's] objection, you'll be allowed to cross-examine, but you will be bound by direct.

MR. SCHWARTZ: If Your Honor please, I'm trying—

THE COURT: I'm not interested.

MR. SCHWARTZ: May I finish, at least, my statement as to this, Your Honor?

THE COURT: No, you may not, Mr. Schwartz. And, if you don't behave yourself, *I'm going to have you taken into custody.*

MR. SCHWARTZ: Your Honor has threatened me every time I have appeared before him.[1]

THE COURT: That's right, and one of these times, I'm going to carry it out, Mr. Schwartz. Now, I'm going to give you a chance. You went through a very tedious and unnecessary cross-examination. You took up the time of the Court and delayed this Court, and I indulged you. Now, do you have any questions of your witness?

MR. SCHWARTZ: Yes, Your Honor, I have questions.

THE COURT: All right, ask him and ask him in a direct fashion, and start right now.

*Call the marshal.*

MR. SCHWARTZ: And, I think Your Honor—

THE COURT: Mr. Schwartz, you better start going. Now ask your questions.

MR. SCHWARTZ: If Your Honor please, first let me say—

THE COURT: Ask your questions.

MR. SCHWARTZ: Your Honor said call the marshal. Now, I'm not going to be under duress while I ask questions.

THE COURT: Call the marshal.

MR. SCHWARTZ: I expect to be treated by Your Honor with the same courtesy and the courtesy that you expect counsel to treat you.

THE COURT: Mr. Schwartz, you're taking the time of this Court. You're exceeding the administration of justice, and you have done it for over an hour. Now, do you have any further questions?

MR. SCHWARTZ: Your Honor came into court—

THE COURT: Do you have any further questions of this witness?

MR. SCHWARTZ: Your Honor came in quarter after ten, and it's now two minutes to eleven. I have not been unduly long, and I have questions—

THE COURT: Mr. Bailiff, take him out.

MR. SCHWARTZ: I can't ask questions? What am I being taken into custody for?

THE COURT: Mr. Schwartz, I find you in direct contempt of this Court, and I fine you two hundred dollars or ten days in jail. And, Mr. Bailiff, turn him over to the U.S. Marshal. [Emphasis added.]

---

1. Counsel may have been referring to an incident which occurred at a hearing seven months earlier in connection with the same proceeding. At that hearing, while appellant was addressing the court, he noticed the trial judge was reading some papers before him. Appellant asked the judge, "Is Your Honor listening to me?" A brief exchange ensued, after which the court remarked:

> THE COURT: And the next time you make an insulting remark like that to the Court, you get ready to bring your toothbrush because you're going to D.C. Jail.

The trial judge subsequently entered a written order of contempt and issued a "Statement of the Court" setting forth the basis of the contempt citation. The court further noted that:

It is the impression of this Court that Attorney Schwartz *engaged in conduct deliberately calculated to deprive plaintiff herein of deserved support of the child of the parties.* Although the issue of custody was settled by consent, the actions of Attorney Schwartz have delayed the award of a· most reasonable amount of support contribution if it is so ordered and an equally reasonable request for counsel fees under the circumstances.

In sum, Alfred M. Schwartz engaged in planned conduct unbecoming a member of the Bar of this jurisdiction, contemptuous of the court and prejudicial to the proper administration of justice. [Emphasis added.]

■ The power to punish summarily should be exercised sparingly. *In re McConnell,* 370 U.S. 230, 82 S.Ct. 1288, 8 L.Ed.2d 434 (1962); *Sacher v. United States,* 343 U.S. 1, 72 S.Ct. 451, 96 L.Ed. 717 (1952). This is particularly true in contempt cases against lawyers, where there must be limited interference with their right to properly represent their clients. *In re Marshall,* 423 F.2d 1130 (5th Cir. 1970); *United States v. Schiffer,* 351 F.2d 91 (6th Cir. 1965), *cert. denied,* 384 U.S. 1003, 86 S.Ct. 1914, 16 L.Ed.2d 1017 (1966). Naturally, this does not mean that an attorney may engage in hostile behavior or insulting speech designed to disrupt the trial. Nor should an attorney be permitted to delay unduly the course of proceedings. Trial judges must maintain discipline in their courtrooms and take whatever reasonable measures that are necessary to ensure the proceedings are conducted in an orderly and expeditious manner. *See In re Nesbitt,* D.C.App., 345 A.2d 154 (1975).

■ In this case, the court precluded, as irrelevant, a course of examination directed to appellant's client. Appellant attempted to state his grounds for the inquiry, but was informed by the court it didn't "have the time" to listen. Appellant persisted in trying to make a proffer for the record, but was not permitted to do so. The court ordered appellant to begin questioning the witness and at the same time, directed the bailiff to "call the marshal." Appellant was then put in the position of having to proceed under pain of removal from the courtroom if he didn't commence his examination immediately with "relevant" questions. Although he may have extended the discussion with the court a bit too long, we do not find in appellant's actions contumacious conduct indicative of a criminal intent to show disrespect for the court or to disrupt the proceedings.

In *In re McConnell, supra,* an attorney, wanting to provide an appellate record, persisted in questioning a witness after the judge ordered him to cease. The attorney insisted he had a right to prepare his record in this manner "unless some bailiff stop[ped him]." *Id.* at 235, 82 S.Ct. 1288.[2] The Supreme Court reversed his conviction for contempt and held there "was nothing in petitioner's conduct sufficiently disruptive of the trial court's business to be an obstruction of justice." *Id.* at 235–36, 82 S.Ct. at 1292. Appellant's conduct here was considerably less volatile.

■ An attorney has the right, if not the obligation, to preserve an issue for appeal or other proceedings. We have recognized that failure to make a proffer in the trial court may preclude appellate consideration of an allegation that evidence was erroneously excluded. *E. g., Rafeedie v. Seelye,* D.C.Mun.App., 178 A.2d 922, 924 (1962). Counsel also should be normally

2. In *McConnell,* the attorney cited Fed.R.Civ.P. 43(c) which requires that before an offer of proof is made, questions intended to lay the proper foundation first must be asked in the presence of the jury. Super.Ct.Civ.R. 43(c) is similar; it also provides that in actions tried without a jury, as here, the same procedure may be followed, "except that the court upon request shall take and report the [excluded] evidence in full . . . ." It is in this manner that claims of error can be preserved for appeal.

afforded an opportunity to state briefly and respectfully his legal argument in favor of the admission of evidence. Appellant was deprived of this procedure here. "[W]here the judge . . . affords counsel inadequate opportunity to argue his position, counsel must be given substantial leeway in pressing his contention, for it is through such colloquy that the judge may recognize his mistake and prevent error from infecting the record." *In re Dellinger*, 461 F.2d 389, 399 (7th Cir. 1972), *aff'd after remand*, 502 F.2d 813 (7th Cir. 1974), *cert. denied*, 420 U.S. 990, 95 S.Ct. 1425, 43 L.Ed.2d 671 (1975). This is not to say that an attorney may prolong discussion with the court once the court is advised of his position and an adverse ruling has been made. He has a right to preserve his point for appeal, but not to impede the proceedings. *Sacher v. United States, supra; In re Abse*, D.C.App., 251 A.2d 655 (1969).

The government relies on *In re Nesbitt, supra,* in support of its contention that appellant engaged in contemptuous behavior when he persisted in discussing with the court the grounds for his inquiry after the court ruled the question irrelevant. We stated in *Nesbitt* that "when the court rules, the remedy is appeal if he is in disagreement, not further argument." *Id.* at 156. But in *Nesbitt*, the record revealed repeated instances of improper conduct. The attorney *purposely* behaved in such a manner during the course of proceedings that a mistrial had to be granted. The contempt conviction was not based on an isolated incident, but upon contemptuous and disrespectful conduct continued in the face of warnings by the trial court. *See also Sacher v. United States, supra.* Here, appellant's conduct does not appear openly defiant. He was merely attempting to press a legal contention. Nor was the dialogue between the court and appellant which led to the contempt citation the culmination of a series of repeated and continuous outbursts. Moreover, we simply find no evidence in this record to support the court's ill-conceived statement that appellant engaged in "[planned] conduct deliberately designed" to deprive the child of needed support.[3] While appellant's cross-examination of the plaintiff may have been, as the court said, somewhat "tedious," it cannot be characterized as a willful attempt to obstruct or delay the judicial proceedings.[4]

We appreciate the need for the court to limit argument in order to preserve decorum and protect its orderly processes. But we are also mindful that intent is a necessary element of criminal contempt. *In re Foshee*, D.C.App., 358 A.2d 332 (1976); *In re Nesbitt*, D.C.App., 313 A.2d 576 (1973). Appellant's behavior may have been, to some degree, irritating to the court but we do not perceive his conduct as rising to the level of willful obstruction of the orderly administration of justice or flagrant disrespect for the court so as to sustain a conviction of criminal contempt. While use of the contempt power is sometimes necessary to maintain the orderly administration of justice, it should not be employed indiscriminately.

*Reversed.*

MACK, Associate Judge, concurs in the result only.

---

3. The minor child in question was then an eighteen-year-old high school student earning approximately fifty dollars per week from a part-time job. The husband had agreed to contribute a "reasonable" amount toward support of the child. The wife testified it would require $430 a month in addition to the child's earnings to meet his immediate needs.

4. In his "Statement of the Court," the trial judge also referred to an "unproductive hearing" held on August 19, 1976, where the court was "led to the brink of a contempt citation." See note 1, *ante*. The parties previously had agreed that the child would remain with the parent who retained possession of the house. By August 19, the parties had agreed to sell the house so that the prior arrangement as to custody was no longer viable. The court on that date deferred decision on the matters of custody and support until the property had been disposed of and both parties had moved from the home.