**In re Melvin A. MARSHALL,**
**Appellant.**

No. 85–60.

District of Columbia Court of Appeals.

Argued July 5, 1988.
Decided Sept. 2, 1988.*

* This case was originally decided by an unpublished memorandum opinion and judgment. Appellant's motion for publication has been granted by the court.

Melvin A. Marshall, pro se.

Dennis R. Carluzzo, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., at the time the brief was filed, and Michael W. Farrell, Asst. U.S. Atty., Washington, D.C., were on the brief, for appellee.

Before MACK, TERRY and STEADMAN, Associate Judges.

PER CURIAM:

Appellant Marshall, an attorney, was convicted of criminal contempt for not appearing in court when he was scheduled to do so. On appeal he maintains that it was unfair to use against him records of prior contempt proceedings that did not result in convictions. He makes several additional contentions, including an assertion that the trial court's actions reflected personal and racial bias. We find his claims of error to be without merit and affirm the judgment.

I

The finding of contempt was based on Marshall's failure to appear before Judge Schwelb on December 6, 1984, for a trial in a criminal case in which he represented the defendant. At about 1:00 p.m. that day he called the judge's chambers to say that he had overslept.[1] This incident troubled the judge because, in the only other case in which Marshall had represented a client before Judge Schwelb (excluding an earlier, unrelated contempt hearing involving Marshall himself),[2] Marshall had been late twice, once because he overslept. Further, on the day before the instant oversleeping episode, Marshall had had a hearing before Judge Hamilton in another contempt case for missing a court appearance (albeit not from oversleeping) before Judge Huhn.

At the hearing on the show cause order, Marshall testified that he woke up at approximately 1:00 p.m. on December 6, 1984. He felt nauseous and dizzy and was vomiting. When he called the court and spoke with the courtroom clerk, he was told that the case in which he was scheduled to appear "would be continued" to a date in January. Next he called the judge's chambers and "informed them that [he] was ill and that [he] had woke up at about 1:00 o'clock." He then took care of some other matters by telephone and went back to bed, concluding "that there was no need to come" to court. Marshall said that he intended no disrespect to the court, and he noted that the scheduled trial probably would have been postponed even if he had appeared.

Marshall acknowledged that he did not use an alarm clock because he normally woke up "at 7:30 or 6:00 o'clock every morning." When the court suggested that he get an alarm clock, he replied that he had tried one in the past, but without success. "I would get up before the alarm clock ... or else I'd sleep right through it. I know how my body works."

At the end of the hearing, the court found Marshall in contempt. It inferred the requisite willfulness from Marshall's recklessness in not having an alarm clock and from his history of missing several scheduled court appearances in the past.[3]

---

1. These facts were set forth in an order issued by Judge Schwelb on December 10, 1984, directing Marshall to show cause at a hearing three weeks thereafter why he should not be held in contempt.

2. In that earlier case, Judge Schwelb had held Marshall in contempt for failing to obey a court order to represent without fee a parent in a child neglect action. *See In re Marshall,* 445 A.2d 5 (D.C.), *cert. denied,* 459 U.S. 875, 103 S.Ct. 166, 74 L.Ed.2d 137 (1982).

3. The trial judge did not rely solely on Marshall's three instances of tardiness before him. The judge had also collected other court files relating to Marshall, and noted that he had been late to court on several occasions before other judges, with contempt charges dismissed after promises to improve his punctuality. Marshall argued that these were isolated incidents.

The court sentenced him to two weekends in jail and a fine of $300, but suspended execution of the jail sentence and all but $75 of the fine. In lieu of imprisonment, the court placed Marshall on three years' probation concurrent with that previously imposed by Judge Hamilton, with the condition that Marshall "carry out [his] obligations as an attorney in a professional manner." The court also earnestly recommended that Marshall get an alarm clock, but did not make his doing so a condition of probation.

Finally, there was a discussion of whether Marshall would be required to pay $10 in costs to the Crime Victims' Compensation Fund. *See* D.C.Code § 3–414 (1988). The court concluded that Marshall would have to pay $10 into the fund because he had been found guilty of a misdemeanor. However, "just to be fair," the court reduced the unsuspended part of the fine from $75 to $65. An order was later entered incorporating all of the court's rulings.

## II

■ Marshall contends that it was improper for the court to use records of his prior episodes of being late to court against him because those episodes (with one exception, the matter before Judge Hamilton) did not result in convictions. We do not agree. Because the prior incidents were relevant to the critical issue of Marshall's willfulness in failing to appear in the instant case, they were properly considered as evidence of his contumacious intent. *Compare Sykes v. United States*, 144 U.S. App.D.C. 53, 55, 444 F.2d 928, 930 (1971) (attorney's failure to appear was "an isolated aberration"; contempt conviction reversed), *with In re Niblack*, 155 U.S.App. D.C. 174, 176, 476 F.2d 930, 932, *cert. denied*, 414 U.S. 909, 94 S.Ct. 229, 38 L.Ed.2d 147 (1973) (attorney's failure to appear "was not an isolated aberration but 'had happened many times in the past' "; contempt conviction affirmed).

■ Marshall also asserts that he was unfairly put in the position of having to defend himself about the prior incidents because he had no notice that they would be used against him.[4] From the order to show cause, however, Marshall had notice that the subject of the contempt proceeding would be his failure to appear on December 6, and he knew (or should have known) from pertinent case law, such as *Sykes* and *Niblack*, *supra*, that evidence of similar lapses on other occasions was relevant and probative. *See also In re Wiggins*, 359 A.2d 579, 580–581 & n. 5 (D.C.1976) (contempt proceeding does not require all procedural safeguards of a criminal trial, although fundamental due process protections must be afforded).

■ Marshall maintains that there was error because the trial judge acted as a prosecutor, presenting the evidence of his earlier failures to appear in court on time. A judge, however, is not strictly prohibited from playing the role of prosecutor to some extent in a contempt case, particularly because the offense is against the court itself rather than the sovereign. *In re Thompson*, 419 A.2d 993, 994–995 (D.C.1980). Furthermore, the trial court was entitled to take judicial notice of Marshall's prior absences, even without formally admitting evidence of those episodes. *See, e.g., Sherman v. Commission on Licensure to Practice the Healing Art*, 407 A.2d 595, 598 n. 6 (D.C.1979) (appellate court may take judicial notice of plea of guilty to perjury charges relating to case on appeal); *Coleman v. Burnett*, 155 U.S.App.D.C. 302, 313, 477 F.2d 1187, 1198 (1973) (court has "power to judicially notice proceedings in related cases" (footnote omitted)); *Green v. Warden, United States Penitentiary*, 699 F.2d 364, 369 (7th Cir.), *cert. denied*, 461 U.S. 960, 103 S.Ct. 2436, 77 L.Ed.2d 1321 (1983) (court may take judicial notice of proceedings of its own and other court systems which are directly related to issues at hand); *see also In re Evans*, 450 A.2d 443, 444 (D.C.1982) (judicial notice of prior contempt proceeding described without comment).

---

4. Although Marshall said he was not aware of the disposition of his case with Judge Hamilton until the hearing before Judge Schwelb began, Judge Schwelb took note of Marshall's surprise.

▮▮ Marshall contends that the judge's taking notice of prior episodes of tardiness in a case tried before him, as well as his earlier finding of contempt in the child neglect case, see note 2, *supra*, demonstrated personal bias on the part of the judge. We disagree for at least two reasons. First, bias is not shown by taking judicial notice of relevant evidence. Second, the case law makes clear that a defendant's previous episodes of misconduct before a judge, even if one has resulted in a criminal contempt citation, do not render the judge unfit to try the defendant. *In re Thompson*, 454 A.2d 1324, 1327–1328 (D.C. 1982); *see Gregory v. United States*, 393 A.2d 132, 142–143 (D.C.1978). In this case, as in *Thompson*, 454 A.2d at 1328, there is no evidence suggesting that the judge was biased against Marshall; indeed, the judge affirmatively stated on the record that he had a "cordial relationship" with Marshall, notwithstanding his having previously held him in contempt.

▮▮ Marshall next argues that a finding of contempt was not justified because his client's trial would have been continued even if he had been present, so that the trial court was not prejudiced by his absence. The law does not support his argument. Contempt of court for failure to appear is unaffected by whether the trial court is actually able to hear the case at the designated time. *In re Gregory*, 387 A.2d 720, 723 (D.C.1978).

▮▮ Marshall contends that because he practices regularly in the Superior Court and appears there virtually every working day, one or two isolated instances of missing a court appearance cannot be the basis for a contempt citation. In fact, however, the record reveals that Marshall's missed court appearances are not so isolated as he suggests. More importantly, we cannot condone absences by lawyers simply because they have heavy caseloads. Indeed, if any conclusion is to be drawn from Marshall's frequent work in the Superior Court, it must be that he is sufficiently familiar with its workings to make timely court appearances.

▮▮ Marshall also challenges the trial court's finding that his failure to have an alarm clock was reckless enough to allow willfulness to be inferred under *Sykes, supra*. We find nothing wrong with the trial court's reasoning, especially as it was buttressed by the uncontested fact that Marshall had overslept for a prior appearance before the same judge, as well as the records of his being late for other court appearances.

Marshall asserts that the trial court was guilty of racism, in large part because it "condemned" him, a man of African ancestry, "because he has not adopted the European mechanical device of an alarm clock to awaken him." This argument was not made below, and hence we decline to consider it. *See, e.g., Adams v. United States*, 302 A.2d 232, 234–235 (D.C.1973); *Miller v. Avirom*, 127 U.S.App.D.C. 367, 369–370, 384 F.2d 319, 321–322 (1967). Even if it had been made, we find Marshall's charge of racism to be without foundation. The record makes clear that the court's concern was not with Marshall's lack of an alarm clock, but with his failure to show up in court when he had a duty to do so. There is nothing in this record that hints of racial or ethnic bias on the part of the trial judge.

▮▮ Similarly, Marshall's charge of disparate treatment is not supported by the record. His allegation that white lawyers are not held in contempt for failure to appear is unfounded. Indeed, there are several published opinions from this court affirming contempt convictions of white lawyers for failure to appear in court at scheduled times. *E.g., In re Evans, supra; In re Gregory, supra; In re Schaeffer*, 370 A.2d 1362 (D.C.1977); *In re Hunt*, 367 A.2d 155 (D.C.1976), *cert. denied*, 434 U.S. 817, 98 S.Ct. 54, 54 L.Ed.2d 72 (1977); *In re Rosen*, 315 A.2d 151 (D.C.), *cert. denied*, 419 U.S. 964, 95 S.Ct. 224, 42 L.Ed.2d 178 (1974).[5]

---

**5.** Marshall calls our attention to four cases (two involving himself and two involving his clients) and two disciplinary opinions concerning himself in support of his claim of racial bias. We decline to go beyond the four corners of the instant case in reaching our decision; but even

Marshall's final argument is that the crime of contempt, which is against the court, not society, should not be subject to costs imposed for the Crime Victims' Compensation Fund. We disagree. Marshall's conviction of contempt was certainly for a criminal violation. Because contempt has no statutory penalty limit, *see In re Evans*, 411 A.2d 984, 990 (D.C.1980), we look to the penalty actually imposed, which here makes Marshall's offense a misdemeanor. *See* 18 U.S.C. § 1 (1982) (repealed effective November 1, 1987). The payment of $10 to the Victims' Fund was thus required by D.C.Code § 3–414 (1988).

The judgment of the Superior Court is accordingly

AFFIRMED.

if we were to do so, the cases to which he refers would not support his claim. We cannot discern any logical connection between those matters and the fairness of the hearing in the instant case.