STATE

v.

Antonio YELLAND.

No. 95–572–C.A.

Supreme Court of Rhode Island.

May 23, 1996.

Andrea Mendes, Special Asst. Atty. General, Aaron Weisman, Asst. Atty. General, for Plaintiff.

William C. Dimitri, Providence, for Defendant.

## OPINION

MURRAY, Justice.

This matter came before the Supreme Court on the appeal of Antonio Yelland (defendant) from judgments of conviction on seven counts of first-degree child molestation. After a jury trial in Superior Court, the defendant was sentenced to serve twenty years of a forty-year sentence, with the remaining twenty years suspended on each of the first three counts of first-degree child molestation, all to run concurrently with one another. With respect to each of the remaining counts of first-degree child molestation, the defendant received a twenty-year sentence, of which he was to serve ten years, with the remaining ten years suspended. The sentences imposed for each of the remaining counts are to run concurrently with one another but consecutively to the sentences imposed for the first three counts. On appeal, the defendant argued that the trial justice erred in (1) refusing to pass the case when the prosecutor made prejudicial remarks in her opening statement and when the prosecutor improperly elicited prejudicial testimony from a witness and (2) denying his motion in limine to exclude testimony that the defendant maintains was irrelevant and prejudicial. We affirm the judgments of conviction for the reasons stated below. The facts of the case insofar as pertinent to this appeal follow.

In January of 1993 defendant was charged by criminal indictment No. P1/93–240A with seven counts of first-degree child molestation upon his biological daughter, Jenny,[1] in violation of G.L.1956 §§ 11–37–8.1 and 11–37–8.2. These events occurred at two residences, one located in Cranston and the other in Glocester.

Jenny, who was thirteen years old at the time of trial, testified that her father, defendant, began molesting her when she was nine years old. At that time defendant was living in Cranston with the family, which included her mother, Barbara Yelland, her older brother, and her younger sister. Jenny explained that the molestation occurred in the upstairs bedroom of the family home while her mother was either shopping or cooking outside on the grill and while her brother and sister were downstairs in the parlor. She testified that once in the bedroom, defendant would pull her clothes down and "put his penis in my vagina and in my bum." He also put his penis "in my mouth," and "white gooey stuff would come out." She testified that defendant told her not to tell her mother and said that he loved her. Jenny never told her mother "because I was afraid she was going to blame me."

The defendant and Jenny's mother later separated, and the three children, including Jenny, began visiting defendant at their grandmother's house in Glocester. Her brother and sister slept in one bedroom upstairs, and she and the defendant slept on the couch together in the parlor on the first floor.

Jenny testified that the sexual abuse continued at her grandmother's house. The defendant would tell Jenny to go to the bedroom upstairs while her brother and sister were watching television in the parlor. Jenny testified that she followed because she was scared. Once in the bedroom, defendant would put his penis into her vagina and into her "bum." Jenny testified that defendant also placed his penis in her mouth.

Jenny's brother later approached their mother and asked why defendant "kept taking [Jenny] alone upstairs at his grandmother's." Jenny's mother confronted Jenny and asked whether defendant was sexually abusing her. Jenny replied, "No." Jenny's mother nevertheless attempted to terminate defendant's visitation rights with Jenny. In October of 1992 Jenny's mother again confronted Jenny about the sexual abuse. This time Jenny admitted that defendant had been touching her. Jenny testified that she finally confirmed her mother's suspicions "because my aunts told them what happened to them."[2]

Jenny and her mother subsequently went to the appropriate law-enforcement authori-

---

1. Jenny is a fictitious name.

2. Although this statement may be somewhat confusing, an examination of the transcript as a whole indicates that Jenny's aunts had spoken to her mother and that Jenny finally revealed the sexual abuse because something had happened to her aunts.

ties. That same day Jenny was examined by a doctor, Doreen Ciancaglini, M.D., at Rhode Island Hospital. Doctor Ciancaglini testified at trial that the "most striking" finding was in the rectal area. She testified that "the normal sp[h]incter of a child or adult should be a closed musculature which is used for defacation [sic], and the muscles contract and relax." However, Jenny's rectal sphincter was "quite flexible and loose, abnormally so." This condition indicated that penetration had taken place and that "it had to have occurred frequently for that to be as relaxed as it was." Upon examination of Jenny's vaginal area, Dr. Ciancaglini concluded that "without a doubt, [Jenny] had been sexually abused over a long period of time."

On appeal defendant avers that the trial justice erred in denying his motions to pass. We first note that "[i]t is well established that a decision to pass a case and declare a mistrial lies within the sound discretion of the trial justice." *State v. McVeigh,* 660 A.2d 269, 275 (R.I.1995) (quoting *State v. Brennan,* 527 A.2d 654, 656 (R.I.1987)). When a defendant complains of allegedly prejudicial remarks made by a prosecutor, the trial justice must assess the potential prejudicial impact of the challenged statements. If the prejudice is inexpiable, the motion to pass should be granted. If the prejudice can be cured, timely and effective instructions must be given. *State v. Marrapese,* 116 R.I. 1, 7, 351 A.2d 95, 98 (1976).

Determination of whether a challenged remark is harmful or prejudicial cannot be decided by any fixed rule of law. *State v. DeCiantis,* 501 A.2d 365, 367 (R.I. 1985). Rather, the trial justice "must evaluate the probable effect of the statement on the outcome of the case by examining the remark in its factual context." *State v. Ware,* 524 A.2d 1110, 1112 (R.I.1987).

Here defendant argues that the trial justice erred in denying his motions to pass the case in three specific instances: (1) when the prosecutor allegedly twice made prejudicial remarks in her opening statement and (2) when the prosecutor improperly elicited prejudicial testimony from a witness.

In regard to the opening statement, the defense counsel objected to the prosecutor's statement that the child-molestation vic-

tim would describe a "perverse" relationship between her and her biological father. The defendant's counsel thereafter moved to pass the case. The trial justice denied the motion but instructed the jury to disregard the descriptive word "perverse." He cautioned the jury:

> "Ladies and gentlemen of the jury, let me remind you, as I have just done a few moments ago, that opening statement is not evidence. What [the prosecutor] is saying to you right now is not evidence for your consideration at the conclusion of this trial. You are instructed to disregard any statements concerning a perverse relationship."

The defendant also objected to the prosecutor's statement "[Jenny] will tell you that it was in this home that the defendant engaged in acts with her. That he *forced* her to perform oral sex on him." (Emphasis added.) The defense counsel objected to the use of the word "force" and moved to pass the case. On appeal, defendant argues that force is not an element of first-degree child-molestation sexual assault and that the use of the word created "the impression in the minds of the jurors that there was some physical compulsion involved in the allegations." The trial justice, however, denied the motion to pass and provided the following cautionary instructions:

> "Let me indicate to you, again, that the opening statements are nothing more than a preview of what the State intends to prove during the course of this trial. Following the presentation of the evidence, the Court will instruct the jury as to the law that you must apply to those facts that you determine to have established in this particular matter. You should not focus on the statements that are made by either counsel on opening, as suggesting that that is, in fact, the law that must be applied in this particular matter."

Upon review of the record before us, we are not persuaded by defendant's contentions that the prosecutor improperly used the words "perverse" and "force" in her opening statement. There is no evidence in the record to show that the prosecutor made the challenged remarks in bad faith. In examin-

ing the prosecutor's opening statement as a whole and within its total context, we find that the prosecutor was merely "appris[ing] the jury with reasonable succinctness what the issues are in the case that is about to be heard and what evidence the prosecution and the defense expect to produce at trial in support of their respective positions." *State v. Byrnes*, 433 A.2d 658, 664 (R.I.1981). We do not believe that the prosecutor's remarks were so inflammatory as to prevent the jury from impartially examining the facts of the case. The trial justice therefore did not abuse his discretion in denying defendant's motion to pass in this instance.

■ The defendant next avers that the trial justice erred in refusing to pass the case when the prosecutor improperly elicited prejudicial testimony from a witness. Specifically the prosecutor asked Jenny on redirect examination, "What made you tell your mom [about the sexual abuse] when you did?" Jenny answered, "Because my aunts told them what happened to them." Upon defense counsel's objections, the trial justice ordered Jenny's response stricken from the record. Although defense counsel moved to pass the case, the trial justice denied the motion. Instead, he issued the following cautionary instructions to the jury:

"Before we resume the testimony, at the end of this morning's session there was some testimony from [Jenny] that she told her mom because of something her aunts told her. The issue before you has nothing to do with what may or may not have occurred concerning [Jenny]'s aunts. You may not speculate as to what may or may not have occurred to [Jenny]'s aunts during your deliberation. You are not even to speculate as to what it is that the aunts may have told [Jenny]."

On appeal defendant contends that Jenny's response created an inference that defendant had sexual contact with Jenny's aunts. This inference, defendant argues, "so infected th[e] trial with unfairness that it denied [him] a fair trial." We are not persuaded by defendant's arguments.

We are of the opinion that the prosecutor's redirect examination of the victim was not, as defendant contends, prejudicial. Jenny testified on direct examination that she had initially denied any sexual abuse by defendant but that she disclosed the abuse after "[her] aunts told what happened to them." On cross-examination, defense counsel emphasized the fact that Jenny had failed to disclose the sexual abuse immediately. The defense counsel then attempted to show that Jenny's mother had improperly manipulated her into admitting the abuse. Jenny's testimony on cross-examination proceeded as follows:

"Q: And is it true, [Jenny], that if your mom found out that you were seeing your father before school, that she would have got mad?

"A: Yes.

"Q: And, [Jenny], your mom did find out that you saw your father on that day, didn't she?

"A: Yes.

"Q: And that at that point your mom asked you again, has your father been touching you, is that true?

"A: No.

"Q: When she found out that you were seeing your father outside of school—

"A: Yeah.

"Q: Continued ....your mom asked you again if he had been touching you, correct?

"A: I don't think it was then.

"Q: First you said no, correct?

"A: Yeah.

"Q: Then she asked you again?

"A: Yeah.

"Q: And then on October 10, 1992, you gave a statement to the Cranston Police Department?

"A: Yes.

"Q: And that was approximately five or six weeks after she had first asked you if your father had been touching you, correct?

"A: Yes."

On redirect examination, the prosecutor asked Jenny why she had finally told her mother of the abuse, to which question Jenny responded, "Because my aunts told them what happened to them." In denying defendant's motion to pass, the trial justice found that

"[t]here ha[d] been testimony from the victim on direct concerning conversations with her aunts. There was some testimony on cross-examination also about [Jenny]'s relationship and interplay with her aunts. Certainly, the Court is mindful of the fact that the defendant is not charged with any criminal acts as they relate to the two aunts. This Court believes and feels that it can frame a proper cautionary instruction * * *."

As the trial justice correctly indicated, given Jenny's testimony on direct and cross-examination, the prosecutor's question on redirect was proper; the prosecutor merely sought to establish why the victim eventually disclosed the abuse. Upon careful consideration of the record as a whole, we find nothing to indicate that the prosecutor's remarks or Jenny's testimony inflamed or aroused the passions of the jury against defendant. We therefore conclude that the trial justice correctly denied defendant's motion to pass the case in this instance.

We are of the opinion that the trial justice's decision to deny each of defendant's motions to pass was not clearly wrong in light of the fact that at all relevant times the trial justice provided cautionary instructions and the fact that those instructions have cured any alleged error. *See State v. Camirand,* 572 A.2d 290 (R.I.1990); *State v. DeCiantis,* 501 A.2d 365 (R.I.1985); *State v. Pailin,* 114 R.I. 725, 339 A.2d 253 (1975). As stated previously, defense counsel objected to certain comments made by the prosecutor in her opening statement and to Jenny's testimony regarding her reasons for disclosing the sexual abuse. Upon defense counsel's objections, the trial justice immediately cautioned the jury that comments made by the prosecutor in her opening statement are not evidence and are not to be considered and that the jury was not to speculate about what may have occurred between Jenny's aunts and defendant. We note that defendant never objected to the trial justice's cautionary instructions. Upon the record before us, we believe that the jury was able to comply with those instructions. Hence the trial justice's decision will not be disturbed.

■ The defendant next argues that the trial justice erred in denying his motion in limine to preclude the state from introducing testimony regarding Jenny's sleeping arrangements at her grandmother's house. In denying the motion in limine, the state was allowed to elicit the following testimony from Jenny on direct examination:

"Q: Where did you sleep on Friday nights at your grandmother's home?

"A: Sometimes I slept on the couch. I slept with my father.

"Q: Now, where's the couch?

"A: It's in the parlor.

"Q: Downstairs?

"A: Yes.

"Q: And how many bedrooms are upstairs?

"A: There was two.

"Q: Who slept in one bedroom?

"A: My cousin Kristin.

"Q: And who slept in the other bedroom?

"A: My brother and my sister, and sometimes me and my father.

"Q: So, you slept in bed with your dad?

"A: Yes.

"Q: And your brother slept with Allysa?

"A: Yes.

"Q: Can you describe what, if anything, happened at your grandmother's home in Glocestor?

"A: He would put his penis in my vagina and in my bum."

The defendant now contends that the trial justice erred in allowing Jenny to testify that she and defendant had slept in the same bed.

In denying defendant's motion in limine, the trial justice indicated that "said facts may be probative as to the [d]efendant's scheme, design, motive, or opportunity." On appeal it appears that defendant is challenging the admission of the testimony in question under Rule 404(b) of the Rhode Island Rules of Evidence. The defendant's reliance on case law regarding the admissibility of evidence of "other crimes" based on Rule 404(b) is clearly misplaced. As the state correctly indicates, testimony that defendant and Jenny shared the same bed was not evidence of "other crimes." Rather the testimony provided a description of defendant's relationship with Jenny while she stayed at her grandmother's house in Glocester. We are

of the opinion that the trial justice correctly admitted such evidence, which was wholly relevant to the charge of first-degree child molestation. This court has recognized that the admission or exclusion of evidence on the grounds of relevancy is within the discretion of the trial justice. *State v. Neri,* 593 A.2d 953, 956 (R.I.1991). The record before us does not indicate an abuse of discretion. Hence, the trial justice's ruling on defendant's motion in limine in this instance will not be disturbed.

In a related claim defendant argues that the "manner in which the State elicited the testimony from [Jenny] regarding the sleeping arrangements, especially after the prosecutor's assurance that [Jenny] would testify that 'nothing ever occurred,' amounts to prosecutorial misconduct which was of such significance that it was a denial of due process." Upon careful consideration of the record before us, we are not persuaded by defendant's unsupported contentions and find defendant's claim of prosecutorial misconduct to be without merit.

Finally, the defendant argues that "the cumulative effect of the errors complained is sufficient to warrant a new trial." In light of our decision today there is no necessity for any consideration to be given to the remaining issue.

For the reasons stated, the defendant's appeal is denied and dismissed. The judgments of conviction are affirmed, and the papers of this case are remanded to the Superior Court.