Mark THOMPSON, Appellant,

v.

UNITED STATES, Appellee.

Nos. 94–CM–1637, 94–CO–1544.

District of Columbia Court of Appeals.

Argued Jan. 15, 1997.
Decided March 13, 1997.

---

**6.** See Act of Aug. 15, 1935, ch. 546, 49 Stat. 651 (for the suppression of prostitution in the District of Columbia) (1935).

Gilda L. Sherrod–Ali, Washington, DC, for appellant.

D. Ames Jeffress, Assistant United States Attorney, Washington, DC, with whom Eric H. Holder, Jr., United States Attorney, and John R. Fisher, Washington, DC, and Leanne Shaltis Fallin, Atlanta, GA, Assistant United States Attorneys, were on the brief, for appellee.

Before SCHWELB and FARRELL, Associate Judges, and MACK, Senior Judge.

Opinion for the court by Associate Judge SCHWELB.

Dissenting opinion by Associate Judge FARRELL at 486.

SCHWELB, Associate Judge:

A trial judge, sitting without a jury, found Mark Thompson guilty of criminal contempt of court for arriving approximately fifty minutes late for a hearing in two misdemeanor cases. On appeal, Thompson contends that the evidence was insufficient to prove beyond a reasonable doubt that his conduct was willful or that he harbored a wrongful state of mind. Because the trial judge expressly stated that he would consider only Thompson's lateness on the day in question, and not several prior occasions on which Thompson also allegedly failed to appear on time, we agree with Thompson's contention and reverse his conviction.

## I.

On May 20, 1994, and again on June 8, 1994, Thompson was charged in successive criminal informations with obstructing and impeding passage on the grounds of the United States Capitol, in violation of D.C.Code § 9–112(b)(5) (1995).[1] On June 20, 1994, the cases were continued to October 25, 1994 for trial. Thompson signed a notice to appear before the trial judge, Honorable Russell F. Canan, on October 25, 1994, at 9:00 a.m.

Thompson arrived late for the October 25 hearing, and the judge asked Thompson's attorney for an explanation. Counsel stated that Thompson "was having a difficult time ... parking his car." The judge remarked that "this is at least ... [the] fourth or fifth time in the course of Mr. Thompson's many appearances before this court that he has been late, without even presenting anything remotely passing as a satisfactory excuse." The judge then stated that he was issuing an order directing Thompson to show cause why

---

1. One of these informations also charged Thompson with disorderly and disruptive conduct on the Capitol grounds, in violation of D.C.Code § 9–112(b)(4).

he should not be held in criminal contempt of court "for being late yet again in this case." [2]

When the court reconvened at 12:25 p.m. on the same day to consider the order to show cause, the judge reiterated that "Mr. Thompson has a now long history of coming late to court, almost too many times to mention." Thompson's attorney then asked the judge to recuse himself:

> Based upon ... what the court said earlier this morning, it is clear to me that the court is not an impartial tribunal in this particular case. The court has indicated that because of prior times not connected with this particular case or cases, but some other cases that were heard earlier this year, the court has, in fact, a bias against Mr. Thompson that would even go toward being a personal bias because of lateness in some other matters, and the court is not considering what is just in this particular case.

The judge responded to the motion for recusal by explaining that he had referred to Thompson's prior history of lateness because he wanted all concerned to understand his reason for going forward on the order to show cause. He then stated that

> these past latenesses are *not part of this trial, this contempt proceeding. That is, you don't have to defend yourself against those matters.* I have already dealt with those matters at that time. I'm just letting Mr. Thompson know and counsel know why, at this point, I'm not willing to defer again Mr. Thompson's contempt of court, why I'm not willing to let it slide.

(Emphasis added.) The judge added that Thompson would be held accountable "*solely* for his failure to appear in court today on time, period," that "*no other evidence is being considered by this court in conjunction with this order to show cause,*" and that "I'm going to judge this case *solely* on the facts as they're presented relative to the incident that occurred or did not occur this morning." (Emphasis added.) The judge denied the recusal motion on the basis of *In re Thomp-*

*son,* 454 A.2d 1324 (D.C.1982),[3] and the hearing on the order to show cause proceeded.

## II.

The judge took judicial notice of the fact that Thompson had signed a notice to appear in his courtroom at 9:00 a.m. on October 25, 1994, for trial, but that Thompson had not been present when his cases were called "after 9:30 ... closer to ten o'clock." The United States presented no witnesses, and the prosecutor advised the judge that the government did not wish to be heard on the contempt charge.

Thompson, the only witness called by either party, testified in his own behalf. Thompson stated that he "could not put my hands" on the notice to appear, but that he had checked with counsel and knew that he had to be in court at 9:00 a.m. that morning before Judge Canan, and also before Judge Arthur L. Burnett in a separate case. Thompson testified that he had left his house between 8:20 and 8:25 a.m., and that he had picked up his codefendant, Brian Harris, between 8:30 and 8:35 a.m. He arrived outside the courthouse just before 9:00 a.m. He let Harris off, and he asked Harris to tell counsel and the judge that he (Thompson) was trying to find a parking space, and that he would be in court as soon as he had found one. Thompson testified that he was unable to find a space in the immediate vicinity of the courthouse, and that he ultimately parked near the Gallery Place metro station. He walked to the courthouse and "stuck his head" in Judge Burnett's courtroom, but saw no one there associated with his case. Thompson stated that he then proceeded to Judge Canan's courtroom and arrived between 9:30 and 9:50 a.m.

After hearing argument from Thompson's attorney, the judge found Thompson guilty:

> THE COURT: The court finds that the elements of criminal contempt require willful disobedience of a court order, causing obstruction of the orderly administration of justice.

---

**2.** It is unclear whether the order to show cause was ever reduced to writing. No written order to show cause appears in the case jacket.

**3.** Thompson has not challenged on appeal the trial judge's refusal to recuse himself.

The evidence in this case indicates that Mr. Thompson did receive [and] sign notice to be here in [this courtroom], 216, at nine o'clock. The evidence is also uncontradicted from Mr. Thompson himself that he knew he had to be in court at nine o'clock. According to his own testimony, he was letting out his codefendant, Mr. Harris, at nine o'clock.

The judge found that "[e]ven giving [Thompson] the benefit of the doubt that he went to Judge Burnett's courtroom first," Thompson did not reach the courthouse, with the car as yet unparked, until shortly before 9:00 a.m., at which time Thompson should already have been in Judge Canan's courtroom. The judge indicated that Thompson could "clearly" have complied with the court order if he "had been of a mind" to do so. Noting that "by his own testimony," Thompson had not arrived in the courtroom until 9:50 a.m., the judge found beyond a reasonable doubt that "Mr. Thompson has been in willful disobedience of the court order to be here on time," and that Thompson's lateness "has caused an obstruction in the orderly administration of justice." [4] The judge suspended imposition of sentence, and he placed Thompson on probation for six months, with the condition that Thompson perform fifty hours of community service. This appeal followed.

### III.

In *Bethard v. District of Columbia*, 650 A.2d 651 (D.C.1994) (per curiam), this court stated:

> The elements of criminal contempt are "(1) willful disobedience; (2) of a court order; and (3) causing an obstruction of the orderly administration of justice." *In re Thompson*, 454 A.2d 1324, 1326 (D.C. 1982) (per curiam). Each element must be

proved beyond a reasonable doubt. *In re Gorfkle*, 444 A.2d 934, 939 (D.C.1982). "The offense requires both a contemptuous act and a wrongful state of mind." *Swisher v. United States*, 572 A.2d 85, 89 (D.C. 1990) (per curiam) (citing *Gorfkle, supra,* 444 A.2d at 939–40). A mere finding of improper conduct is not sufficient, rather we must find a "willful attempt [by the contemnor] to show disrespect for the court or to disrupt the proceedings." *Gorfkle, supra,* 444 A.2d at 940 (footnote omitted).

*Id.* at 653. Here, Thompson's challenge is directed solely to the sufficiency of the evidence of willfulness.[5]

Thompson's adjudication of criminal contempt was predicated upon his tardiness in appearing in court. Most of our cases on that subject have involved contemnors who are attorneys, *see Williams v. United States,* 576 A.2d 1339, 1342 (D.C.1990) (citing authorities),[6] and who therefore "must be held to a high standard of accountability." *Sykes v. United States,* 144 U.S.App. D.C. 53, 55, 444 F.2d 928, 930 (1971). So far as the record reflects, Thompson is not a lawyer. Although courts should perhaps be somewhat less exacting where the contemnor has no legal training, we have applied our precedents involving attorneys in cases involving lay defendants as well. *See, e.g., Williams, supra,* 576 A.2d at 1342; *Swisher, supra,* 572 A.2d at 89–90.

"In order to hold a defendant in [criminal] contempt for appearing late, a court must find that the defendant behaved with willful, deliberate, or reckless disregard of the obligation to appear on time." *Williams, supra,* 576 A.2d at 1342 (citations omitted). Because the defendant's state of

---

**4.** The judge then added:

> Indeed, there's no doubt in this court's view that the defendant is in contempt of court, based on the facts presented in this court today.

**5.** Although Thompson signed a notice to return to court on the trial date, "there is no indication in the record that Thompson was ordered, in so many words, to appear [on October 25, 1994]". *See Swisher, supra,* 572 A.2d at 89 n. 8. Here, however, as in *Swisher,* the defendant

has not raised, either in the trial court or on appeal, the question whether there was any court order for him to disobey. Judge [Canan] found, at least implicitly, that the Notice to Return to Court was a court order, and we are disposed neither to raise the issue *sua sponte* nor to conclude that such a finding was "plain error." *Cf. D.D. v. M.T.,* 550 A.2d 37, 48–49 (D.C.1988).

*Id.*

**6.** *Williams* itself did not involve an attorney.

mind must be wrongful, however, we must not permit the adjective "reckless," as used in *Williams,* to become a synonym for "negligent." We are dealing here with an offense which requires proof of "a willful attempt to show disrespect for the court or to disrupt the proceedings." *Swisher, supra,* 572 A.2d at 89 (citation and footnote omitted). For purposes of criminal contempt, a defendant is therefore "reckless" only if he intentionally does an act with a willful disregard of its potential consequences.

 A wrongful intent is a state of mind, and in most cases it cannot be proved directly. Our case law makes it clear, however, that willfulness will not readily be inferred from isolated instances of late arrival. Where the defendant is a repeat offender, on the other hand, a finding that his conduct was willful has been sustained.

In *Sykes, supra,* a judge held Sykes, an attorney, in criminal contempt after Sykes had failed to appear for a trial. The record showed that Sykes had been preoccupied with other matters, and that his non-appearance resulted from a lapse of memory. The United States Court of Appeals reversed Sykes' conviction, holding the evidence insufficient to support a finding that Sykes had deliberately or recklessly disregarded his obligation to the court, or that he had intended any disrespect for the court. *Sykes,* 144 U.S.App. D.C. at 55, 444 F.2d at 930. The court so concluded because Sykes had an excellent record and because there was no evidence that "the appellant's lapse was anything but an isolated aberration." *Id.*

The decision in *Sykes* can profitably be compared with *In re Niblack,* 155 U.S.App. D.C. 174, 476 F.2d 930 (per curiam), *cert. denied,* 414 U.S. 909, 94 S.Ct. 229, 38 L.Ed.2d 147 (1973). Niblack, an attorney, appeared one hour and fifty minutes late for a motions hearing. Observing that Niblack had been warned "time and time again about being on time," the trial judge held him in criminal contempt and fined him $50. *Id.* at 175, 476 F.2d at 931. The appellate court affirmed Niblack's conviction, distinguishing *Sykes* on the ground that, in that case, the default "had resulted from a lapse of memory and was an isolated aberration," whereas in

*Niblack* "the district judge stated that the failure of Niblack to appear was not an isolated aberration but had happened many times in the past and that the appellant had been repeatedly warned about such misconduct." *Id.* (Footnote and internal quotation marks omitted.)

The significance for present purposes of the distinction between a single aberration on the one hand and a pattern of tardiness on the other was reiterated in *In re Marshall,* 549 A.2d 311 (D.C.1988) (per curiam). Marshall, an attorney, failed to appear for trial in a criminal case. He subsequently claimed that he had overslept and that he did not have an alarm clock. The trial judge held Marshall in criminal contempt. In doing so, the judge took note of a number of prior occasions on which Marshall had been absent or late. On appeal, Marshall contended, *inter alia,* that the trial judge should not have considered Marshall's previous lapses. This court disagreed:

> Because the prior incidents were relevant to the critical issue of Marshall's willfulness in failing to appear in the instant case, they were properly considered as evidence of his contumacious intent. *Compare Sykes,* [*supra*], (attorney's failure to appear was "an isolated aberration"; contempt conviction reversed), *with In re Niblack,* [*supra*], (attorney's failure to appear "was not an isolated aberration but 'had happened many times in the past' "; contempt conviction affirmed).

*Id.* at 313.

In *Williams, supra,* the defendant was held in criminal contempt for appearing one hour and fifty minutes late for the second day of his trial. The trial judge found, *inter alia,* that Williams' lateness was willful, and that oversleeping was no excuse, because Williams "didn't make any effort to have himself here at ten o'clock. Ten o'clock certainly isn't the break of day." On appeal, this court remanded the case to the trial court for additional findings, opining, *inter alia,* that the trial judge might erroneously have focused solely "on appellant's failure, as

in *Marshall*,[7] to set [his] alarm—an insufficient basis for finding willfulness on the record here." 576 A.2d at 1343. Exercising its "supervisory authority," this court held that in all cases in which the judge who initiated a criminal contempt charge subsequently conducts the trial, the judge "must make specific findings of fact and conclusions of law responsive to the testimony offered." *Id.* at 1345.[8] After concluding that a remand was required, the court added the following:

> Without question, punctuality is essential to a functioning court system, and criminal contempt is a necessary sanction to help courts assure the orderly administration of justice. This decision does not compromise a defendant's obligation to report to court on time. Rather, it affirms the responsibility of a trial judge in non-summary criminal contempt cases over which that judge presides to address the testimony given and to articulate clearly the grounds for the ruling. A trial judge may discredit the testimony of a defendant who appears late in court, even one who has never been late before, and find that the lateness was willful, deliberate, or reckless. The judge may not, however, create a conclusive presumption of willfulness merely from the fact that there was notice to appear at a time certain and the defendant failed to do so.

*Id.* at 1345–46.

■ Read together, the decisions we have cited do not guarantee the defendant one free late arrival. Our authorities do not hold that a defendant can *never* be held in criminal contempt on the first occasion that he comes to court late. Where the record consists solely of one moderately late appearance, however, there must be significant circumstances, other than the late arrival itself, to permit the court to infer willfulness and to find guilt beyond a reasonable doubt. Moreover, the judge is required, under *Williams*,

to address the defendant's explanation in some detail and to articulate with particularity the reasons for finding that the defendant's conduct was willful or reckless, rather than merely negligent.[9] Indeed, we know of no decision in this jurisdiction in which, in the absence of prior tardy appearances, a conviction of criminal contempt has been sustained on the basis of facts comparable to those before us.

## IV.

■ We now apply the legal principles set forth in the cited authorities to the record in this case. We note at the outset that if Thompson was inexcusably late on several previous occasions—a fact that may not be in dispute—and if those late arrivals were a part of the record, then the evidence would plainly suffice to sustain a conviction of criminal contempt. *See, e.g., Niblack, supra,* 155 U.S.App. D.C. at 176–77, 476 F.2d at 932–33.

In response to Thompson's motion to recuse, however, the judge explicitly assured defense counsel that prior incidents of lateness would not be considered in determining Thompson's guilt or innocence in the case before the court, and that it would not be necessary to prepare a defense to those incidents. Under these circumstances, we are obliged to evaluate the sufficiency of the evidence without taking into consideration any of Thompson's previous failures to arrive on time. In fact, as the judge indicated, the case must be decided solely on the basis of the events that occurred on October 25, 1994.

When the events of that day are separated from the context of Thompson's previous late appearances, the record supports a finding of negligence on his part, in that he failed to estimate correctly how long it would take him to park. We conclude, however, that the evidence relating to October 25, 1994, falls

---

7. The court found it significant that "this was the first time appellant had been late for his trial or for any other proceeding before this judge, in contrast with the situation in *Marshall.*" *Williams,* 576 A.2d at 1343.

8. We note that the judge's findings in *Williams* roughly parallelled, in general approach and degree of detail, Judge Canan's findings here.

9. In the present case, Thompson has not asserted that the judge's findings lacked the detail apparently required by *Williams,* and we do not address the question of their sufficiency.

short of proving willfulness or recklessness. Other than the fact of late arrival, there is little, if anything, to show that Thompson was actuated by a wrongful state of mind.[10] In retrospect, he should plainly have made allowances for the possibility that parking near the courthouse might prove difficult. A single erroneous estimate of the time that it takes to find a parking space, however, does not, when considered alone, translate readily into a criminal offense.

We have held that in cases in which the judge who initiated the charges is also the trier of fact, an appellate court must review the record with some care. *See Williams, supra,* 576 A.2d at 1345. Moreover, a criminal contempt conviction has serious consequences for the contemnor. "If asked about a criminal record on an employment applica-

tion form, [Thompson] is bound to disclose it." *Hopkins v. United States,* 595 A.2d 995, 998 (D.C.1991) (concurring opinion). Life with a "record" can be quite difficult in a wide variety of ways.[11]

Having examined the case with these considerations in mind, we conclude that the evidence will not sustain Thompson's conviction. Viewed in isolation from the previous incidents, the events of October 25, 1994 reflect an unfortunate mistake of judgment, but not a crime. Accordingly, the decision of the trial court adjudicating Thompson in criminal contempt is reversed, and the case is remanded with instructions to enter a finding of not guilty and to discharge the order to show cause.

*So ordered.*[12]

10. Thompson's attorney synopsized the facts effectively in her closing argument in the trial court:

> Your Honor, I would just like to indicate that Mr. Thompson's actions in this case were not willful, nor was there a reckless disregard for his obligation to be here. He indicated to the Court that he had lost his two slips, but that he did contact counsel yesterday afternoon; that counsel informed him of his obligation to be here; that counsel gave him information about the two separate cases being in two separate courtrooms; that he picked up his codefendant; that they arrived down here at the courthouse, but they could not find a parking place; that he let the codefendant out of the car, the codefendant having arrived here in a timely manner; that he continued to ride around until he eventually found a parking space; that he walked directly to the courthouse, he didn't go anywhere else; that he checked the computer board downstairs; that he checked into another courtroom, Courtroom 103, and then he came straight up here to this courtroom.

He did nothing to show a willful or reckless disregard for the Court, Your Honor. And I would ask that this Court not find him in contempt.

11. In this case, the trial judge suspended imposition of sentence. We do not address the question whether, if we were to affirm the judgment, the suspension of the imposition of sentence would affect the collateral consequences for Thompson of the adjudication of guilt.

12. Our dissenting colleague asserts that our disposition is inconsistent with the decision in *Williams.* He focuses on the court's statement in that case that the judge "may discredit the testimony of a defendant who appears late in court, even one who has never been late before, and

find that the lateness was willful, deliberate, or reckless." 576 A.2d at 1345.

We do not doubt that a defendant who comes to court late and then lies about the circumstances, and who thus gives rise to an inference of consciousness of guilt, may be found to have acted willfully or recklessly even if he has never been late before. In the present case, however, the judge did not discredit Thompson's testimony, and he made no finding that Thompson lied. On the contrary, the judge largely based his finding of contempt on Thompson's own account of his actions. The judge's decision, in other words, was not based on an evaluation of Thompson's credibility, but on an assessment, with which we disagree, of the legal consequences of the facts as related by Thompson. This case is thus unlike *Trice v. United States,* 525 A.2d 176 (D.C.1987), in which this court held that where the jury rejects the defendant's evidence, and thus discredits his explanation of his failure to appear, the inference of willfulness generated in bail jumping cases by D.C.Code § 23–1327(b) (1996) remains intact and unrebutted. *Id.* at 182. The court stated that "[i]f the jury accepts [the defendant's evidence], the defendant is acquitted." *Id.*

Moreover, in the sentence in the *Williams* opinion which follows the one on which Judge Farrell relies, see page 485, *supra,* the court emphasized that a finding of willfulness may not be based solely on proof that a defendant received notice to appear at a certain time and that he failed to do so. *Id.* at 1345–46. Nothing more of substance was proved here. We think that the *Williams* opinion, read as a whole, and considered in conjunction with *Sykes, Niblack,* and *Marshall,* supports reversal rather than affirmance on the present record.

Judge Farrell also asserts, *post* at 486, that Thompson had "previously been warned of his duty to appear, a warning that 'shall be a factor in determining whether [a subsequent] failure to

FARRELL, Associate Judge, dissenting:

I would sustain the finding of willful disobedience of a court order to appear on time, and the adjudication of contempt.[1]

Appellant, who acknowledged having come to court before by car and had to park, left home this time so late that he arrived at the courthouse front with five minutes to park. He appeared in the courtroom fifty minutes late. He had previously been warned of his duty to appear, a warning that "shall be a factor in determining whether [a subsequent] failure to appear was wilful. . . ." D.C.Code § 23–1327(b) (1996). *See also id.* ("Any failure to appear after notice of the appearance date shall be prima facie evidence that such failure to appear is wilful"). He had also been repeatedly warned of the penalties for failure to appear. The judge eventually convened a hearing whose adequacy is not challenged, heard appellant's explanation (which included no reason for leaving home late and no attempt to telephone the clerk or the judge's chambers), and concluded that his indifference to the court order went beyond negligence—was willful within the meaning of D.C.Code § 11–944(a) (1995).

The court now effectively retracts what we told parties in *Williams v. United States,* 576 A.2d 1339 (D.C.1990). We said there that a judge "may discredit the testimony of a defendant who appears late in court, *even one who has never been late before,* and find that

the lateness was willful, deliberate, or reckless." *Id.* at 1345 (emphasis added). That is so because "punctuality is essential to a functioning court system, and criminal contempt is a necessary sanction to help courts assure the orderly administration of justice." *Id.* We remanded in *Williams* because of the danger in that case that the judge had relied on a "conclusive presumption" of willfulness from notice and failure to appear on time (no similar allegation is made here). But we left little doubt that after an evidentiary hearing and reconsideration we would sustain a finding "that appellant's failure to ask anyone to wake him up constituted reckless disregard of his duty to appear in court at 10:00 a.m.," *id.* at 1343, whether or not he had been late before.[2]

Yet, in this case, while reassuring the trial court that our decisions "do not guarantee the defendant one free late arrival," *ante* at 484, the court all but holds just that. For unless the defendant has a record of prior late appearances, there must be "significant circumstances" present beyond the fact of late arrival—or "moderately" late arrival—to justify contempt, *ante* at 484, otherwise the judge may only warn the defendant again and move on. Since it is hard to imagine what such a "significant circumstance" would be other than an avowed intent to defy the court's order, I can only conclude we did not mean what we said in *Williams.*[3] The rule

---

appear was willful.' " (quoting the Bail Reform Act, D.C.Code § 23–1327(b) (1996)). Judge Farrell adds that Thompson "had also been repeatedly warned of the penalties for failure to appear." The trial judge confined the record germane to this appeal, however, to the events of October 25, and the only "warning" that the judge could or did consider under his own ground rules was the notice directing Thompson to appear on that date. *See Williams,* 576 A.2d at 1345–46. Moreover, it is worth noting, although obviously not dispositive, that Thompson was not prosecuted for a violation of the Bail Reform Act, and that the government declined to associate itself in the trial court with the contempt proceedings against him.

1. One effect of the majority's contrary conclusion is to reduce the incentive for the trial court to do what the judge did here, namely suspend the imposition of sentence to spare the defendant most, if not all, of the consequences of a formal judgment of conviction. *See, e.g., Langley v. United States,*·515 A.2d 729, 734 (D.C.1986).

2. Indeed, we had just distinguished *In re Marshall,* 549 A.2d 311 (D.C.1988), by discounting the government's assertion that, as in *Marshall,* Williams had a prior history of late appearances. *Williams,* 576 A.2d at 1343.

3. Professing to leave *Williams* intact, the majority implies that if the judge had "discredit[ed] Thompson's testimony" the result would be different. *Ante* at 485 n. 12. But the only relevance of Thompson's testimony about his late departure from home and stop to pick up his companion was as to his state of mind—whether it showed simple carelessness or gross indifference to the court order that equalled willfulness. In finding the latter, the judge obviously discredited the defendant's efforts to minimize his fault.

Contrary to the majority's suggestion, our cases have never suggested that the judge must first find that the defendant has perjured himself ("lied") in explaining his conduct, thus showing "consciousness of guilt," before a finding of willfulness in a case such as this is permitted. *See,*

 

now is that, absent deliberate flouting, once is not enough.

e.g., *Trice v. United States,* 525 A.2d 176, 182 (D.C.1987) (in related prosecution for BRA violation, factfinder need only "reject[ ]" adequacy of defense proof before finding willfulness based on inference allowed by § 23–1327(b)).

The fact, of course, that the government did not prosecute for BRA or ask to be heard on the contempt has no bearing on whether a judge may punish disobedience of an order that obstructs the progress of cases in his courtroom.