**Dionne SAVAGE, Appellant,**

v.

**Cheryl M. BURGESS, M.D., et al., Appellees.**

**No. 11–CV–1530.**

District of Columbia Court of Appeals.

Argued April 30, 2013.

Decided July 25, 2013.

Paul Y. Kiyonaga, Washington, DC, for appellant.

Andrew J. Spence, with whom Edward A. Gonsalves and Nicholas G. Hallenbeck, Rockville, MD, were on the brief, for appellees.

Before GLICKMAN and BLACKBURNE–RIGSBY, Associate Judges, and NEBEKER, Senior Judge.

NEBEKER, Senior Judge:

Appellant, Dionne Savage, brought various medical-malpractice related claims against the appellees, Cheryl M. Burgess, the Center for Dermatology and Dermatologic Surgery, The Professional Aesthetic Image Center, P.C. and Francis Dent, after receiving a chemical peel that left her with painful burns and scars.[1] At trial, appellant tried to qualify Dr. Stephanie P. Diamond as an expert witness. We conclude that counsel elicited a proper foundation for Dr. Diamond's opinion on a national standard of care before the trial court cut the questioning short. Accordingly, we reverse the trial court's judgment in favor of appellees, and remand for further proceedings.

On the first day of trial, following testimony from appellant and appellee Dent, appellant called Dr. Diamond, a board-certified dermatologist from Pennsylvania. Dr. Diamond testified about her education, professional experience, and review of the records at issue in this case. Then, Dr. Diamond identified texts she believed were "authoritative treatises in the field of dermatology," including a textbook on chemical peels and a document "from the Neostrata Company, [asserted to be] one of the leading companies that makes glycolic acid peels." She also described reviewing "some articles from journals that I showed during my deposition." At this point, appellant asked Dr. Diamond if she was "prepared to render an opinion as to the standard of care to a reasonable degree of medical certainty?" This question drew a prompt objection from appellees, who argued that appellant had not yet laid a proper foundation for Dr. Diamond's opinion. The court sustained the objection.

It is unnecessary to summarize what followed in detail. Suffice it to say that appellant's counsel had great difficulty phrasing his questions to the court's satisfaction, but eventually crafted the following exchange:

Q: What—specifically, what document did you review for—in connection with this case?

. . .

A: I reviewed the medical records from when Ms. Savage was treated at Dr. Burgess's office. I reviewed depositions of Dr. Burgess, of Mr. Dent, of Dr. Issacson, of Dr. Downey, and the—my deposition when I was deposed. I reviewed various textbooks on the—on the subject of chemical peels, and I also reviewed literature that was provided by one of the major companies that manufactures chemical[ ] peels, as well as other articles from my field of dermatology and our peer review journals.

Q: I believe previously you testified to text that you reviewed that you believe to be authoritative.

A: Correct.

Q: Is it your opinion that they are—that they apply to a national standard of care with respect to dermatology?

At that point, appellees objected and a colloquy occurred at the bench.

During this colloquy, the court explained that Dr. Diamond had been called to testify to "a limited issue" and so "the basis for being able to opine has to be specific to the particular issues in this case." The court explained that, even though Dr. Diamond was "a dermatologist," she also had to know the "particular area" at issue in the case. After further discussions of Dr. Diamond's professional experience, the trial court informed appellant's counsel that "if you cannot qualify her, we're going to have to proceed." Appellant's counsel did not

1. Prior to trial, appellant's claim against Burgess personally was dismissed.

ask Dr. Diamond any further questions, and she was not cross-examined.[2]

The following day, the trial court granted appellees' motion for judgment as a matter of law under Super. Ct. Civ. R. 50. The trial court determined that appellant had failed to establish a basis for Dr. Diamond's opinion about a national standard of care. Referring specifically to the literature Dr. Diamond had identified, the court concluded that "there was no evidence [about] what the literature was, or what the articles on peer review were. There's no evidence that they contained information about any type of national standard of care...." The court's grant of judgment in favor of the appellees was based on the "failure to proffer a necessary expert in this particular case to establish the applicable standard of care necessary to prosecute this particular trial."

Here, the trial court was clearly aware of both its discretionary power and this court's previous rulings on expert testimony about the national standard of care in medical malpractice cases. However, the trial court did not recognize that Dr. Diamond's testimony and the exhibits that had already been marked for identification had already established a proper foundation for her testimony as an expert.

We have often held that an expert's opinion must include "some evidence of a national standard, such as attendance at national seminars or meetings or conventions, *or reference to published materials*, when evaluating a medical course of action or treatment." *Hawes v. Chua*, 769 A.2d 797, 806 (D.C.2001) (emphasis added); *see also Hill v. Medlantic Health Care Grp.*, 933 A.2d 314, 326–27 (D.C.2007) (foundation for expert's testimony inadequate where expert did not "provide an independent basis" for concluding "that his opinion ... was based upon *literature*, speaking with other doctors around the country, attending medical conferences, *or reviewing published national standards*." (emphasis added)). In the exchange we have quoted earlier in this opinion, we have a reference to published materials that Dr. Diamond already identified as "authoritative," including both "textbooks" and "peer[-]review[ed] journals." The unanswered question asked Dr. Diamond whether the materials she had already identified contained a "national standard of care" applicable to "dermatology," the medical field broadly at issue in this trial.[3] As a result, we conclude that, like the expert in *Hawes*, Dr. Diamond had presented a "minimally sufficient" foundation for her testimony because she testified as "a board certified" dermatologist, and indi-

---

**2.** We attach no significance to either appellant's failure to formally move to qualify Dr. Diamond as an expert or to attempt to question her further. For reasons discussed more fully below, the trial court had already erred in its analysis of Dr. Diamond's testimony. It would be taking our rules of preservation too far to require appellant to make a hopeless motion or to demand that appellant take up more of the court's and the jury's time searching out another approach to admissibility. *Cf. In re Schwartz*, 391 A.2d 278, 282 (D.C. 1978) (noting that "an attorney" has no obligation to "prolong discussion with the court once the court is advised of his position and an adverse ruling has been made").

**3.** While we recognize that the specific issues in this trial were narrower than the general field of "dermatology," we note that the texts initially identified by Dr. Diamond had titles suggesting they contained discussions of the proper performance of chemical peels (e.g., "Manual of Chemical Peels, Superficial and Medium Depth," and "Neostrata Glycolic Acid Peel Treatment Note"). Thus, while the appellant's counsel's final question may have been imprecisely worded, the record suggests that Dr. Diamond's testimony would have been based on literature relevant to the issues being tried.

cated that she "based [her] opinions on[ ] the literature of [her] specialty." *Hawes, supra,* 769 A.2d at 808.

Appellees' reliance on this court's opinion in *Nwaneri v. Sandidge,* 931 A.2d 466, 475 (D.C.2007), is misplaced. In finding the expert's testimony in that case inadequate to establish a foundation for an opinion on the national standard of care, this court wrote that, despite the expert's repeated reference to published materials, "there [was] no evidence that the journals [the expert] received ... contained information about the national standard of care, or revealed what that standard was." *Id.* The expert had also failed to provide "any testimony indicating whether these journals, or his published article, were national, peer-reviewed publications that recognized a national standard of care for vascular surgeons." *Id.* By contrast, in this case, Dr. Diamond had already identified authoritative literature that appears, on its face, to contain relevant information, thus supplying the foundation lacking in *Nwaneri. See* note 3, *supra.* We also suspect that, had Dr. Diamond been permitted to answer the last question posed by appellant's counsel, the foundation would have been even clearer to all involved.

 Having determined that the trial court erred, we turn to the question of whether that error must result in a reversal. Reversal is appropriate when an "error had a possibly substantial impact upon the outcome" of the "proceeding as a whole." *Johnson v. United States,* 398 A.2d 354, 366 (D.C.1979). Here, the trial court did not realize that the foundation for the expert's testimony had been established, an error which led it to grant judgment to appellees. As a result, reversal is warranted. For this reason, we do not address appellant's other appellate contentions.

Accordingly, the judgment of the Superior Court is reversed, and this case is remanded for further proceedings. *See* D.C.Code § 17–306 (2001).

*So ordered.*